**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Sharon A. Stadther, | Civil No. 11-1297 (DWF/JJG) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Department of Homeland Security, Kenneth Kasprison, Megen Kelly, Lola Jackson, and Diane DiCarlo, | |
| **Defendants.** | |

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendants' Motion and Amended Motion to Dismiss (ECF Nos. 27, 50), Plaintiff's Motion to/for Section 706(f)(2) of Title VII (ECF No. 30), Plaintiff's Motion to/for Rule 9 (ECF No. 33), Plaintiff's Motion to/for Rule 8 (ECF No. 39), and Plaintiff's Motion to/for Tort-Intentional Infliction of Emotional Pain (ECF No. 45). All dispositive and nondispositive motions were referred to this Court in an Order of Reference dated January 19, 2012 (ECF No. 26). For the reasons set forth below, the Court recommends that Defendants' motions to dismiss be granted, Plaintiff's motions be denied, and the case be dismissed with prejudice.

## I.     BACKGROUND

### A.     Factual Allegations in the Amended Complaint and Attached Exhibits

The facts in this section were taken from the Amended Complaint and attached exhibits (Am. Compl., ECF No. 5). Plaintiff Sharon Stadther was employed as an airport security screener for the Transportation Security Administration, a division of the Department of

Homeland Security. (*Id.* at 2, 7.) In April 2005, she suffered an injury at work. (*Id.* at 3.) After undergoing vocational rehabilitation, she returned to work in a limited duty capacity in November 2007. (*Id.* at 5.) On Plaintiff's first day back at work, another screener asked why she was there and harassed her. (*Id.*) Plaintiff began crying and went into a bathroom, where she encountered Defendants Lola Jackson and Megen Kelly. (*Id.*) Plaintiff described the incident, and Kelly told Jackson to handle it, but neither Kelly nor Jackson took any action. (*Id.*)

Because medical restrictions prevented Plaintiff from fully performing the duties of a certified checkpoint screener, she was assigned modified duties as a transportation security screener. (*Id.* at 6 & Ex 5 at 5.) Specifically, Jackson assigned her the duty of monitoring and watching passengers in the screening corral and airport employees in the training center and checkpoint lanes. (*Id.* Ex. 5 at 5.) Plaintiff kept a diary at work and recorded her daily tasks. (Am. Compl. at 6.) According to Plaintiff's diary entries, she was frequently assigned to a solitary room where she would sit all day, and her work schedule was changed frequently and for no apparent reason. (*Id.*) Plaintiff continuously asked about open positions in the customer service, payroll, and lost-and-found departments, but Kelly refused to give her information about open positions or assign her to a new position. (Am. Compl. at 6 & Ex. 5 at 6.)

On May 13, 2008, Plaintiff requested an accommodation for her disability. (Am. Compl. at 6.) A week later, she met with Jackson, Kelly, and a Human Resources representative to discuss other possible jobs. (*Id.*) Plaintiff claims she suffered a nervous breakdown and was constructively discharged that same month. (*Id.* at 6, 7.)

After Plaintiff stopped working, she continued paying her insurance premiums and filed claims with her insurance carrier. (*Id.* at 7.) She learned that Defendant Diane DiCarlo had

canceled her insurance. (*Id.*) Plaintiff continued to pay her insurance premiums for two years but did not receive coverage. (*Id.*)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. In an order dated January 6, 2010, attached to the Amended Complaint as Exhibit 5, an administrative judge concluded that Plaintiff had been entitled to a reasonable accommodation in the Transportation Security Administration (TSA) Black Diamond program. (Am. Compl. Ex. 5 at 13.) Plaintiff did not request an accommodation, demonstrate she was qualified for, or show that a vacant, funded position existed for any other position, however. (*Id.*) In addition, Plaintiff did not establish she was subjected to a hostile work environment because of a disability. (*Id.*) The administrative judge recommended that Plaintiff be awarded $5,000.00 in non-pecuniary damages as compensation for depression and emotional distress. (*Id.* at 15.) Both Plaintiff and the TSA appealed that decision. (Am. Compl. Ex. 6 at 1.)

**B.    Claims and Parties**

Plaintiff initiated this action by filing a complaint on May 19, 2011, and the Amended Complaint on June 21, 2011. Plaintiff alleges discrimination, failure to accommodate, failure to promote, harassment, and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112; the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and § 2000e-3(a). As relief, she is seeking back pay, front pay, compensatory damages, and punitive damages. (Am. Compl. Ex. 4 at 22.) The named Defendants are the Department of Homeland Security (DHS) and DHS employees Kenneth Kasprison, Megen Kelly, Lola Jackson, and Diane DiCarlo.

C.     **Procedural History after the Motion Hearing**

The hearing on the five motions under advisement was held on March 27, 2012. At that time, Plaintiff was representing herself pro se. Shortly after the hearing, while the motions were pending, this Court noticed a settlement conference for April 30, 2012. The settlement conference was continued twice at the parties' request. Meanwhile, attorney Pamela Abbate-Dattilo agreed to represent Plaintiff at the settlement conference, which was held on June 13, 2012. Although the case did not settle, Ms. Abbate-Dattilo requested permission to appear on behalf of Plaintiff for the limited purpose of filing a supplemental memorandum in opposition to Defendants' pending motion to dismiss. Defendants did not oppose Ms. Abbate-Dattilo's request, but asked for permission to file a supplemental reply no sooner than three weeks after Ms. Abbate-Dattilo's memorandum was filed. As ordered by the Court, Ms. Abbate-Dattilo filed her memorandum on July 9, 2012, and Defendants filed their memorandum on July 30, 2012.

II.     **DEFENDANTS' MOTION TO DISMISS**

A.     **Legal Standards**

Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Their arguments for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction are grounded in sovereign immunity. A party challenging subject matter jurisdiction under Rule 12(b)(1) may mount either a facial or factual attack to the court's jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990). On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.* Here, Defendants have raised factual challenges to subject matter jurisdiction and rely on materials beyond the pleadings. Plaintiff, as the party

invoking jurisdiction, bears the burden to establish it. *See Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). Generally, the Court may not consider matters outside the pleadings on a Rule 12(b)(6) motion to dismiss. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). There are limited exceptions to this rule, however, for matters of public record, judicial orders, documents "necessarily embraced by the pleadings," and exhibits attached to the pleadings. *See id.* (citations omitted). When a complaint's allegations conflict with the attached exhibits, the facts in the exhibits typically control. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).

**B.     Plaintiff's Rehabilitation Act Claim**

The Rehabilitation Act prohibits federal agencies from discriminating and retaliating against federal employees because of a disability. *See* 29 U.S.C. §§ 791(b), 794(a), 794(d). The Act is "the exclusive vehicle for judicial remedy of claims of discrimination in federal employment." *Gardner v. Morris*, 752 F.2d 1271, 1278 (8th Cir. 1985).

Defendants concede that Plaintiff exhausted her administrative remedies with respect to her Rehabilitation Act claim. (Defs.' Suppl. Reply Mem. at 2-3.) Defendants argue, however, that the claim is preempted by the Aviation and Transportation Security Act (ATSA).

Congress enacted the ATSA in response to the September 11, 2001 terrorist attacks, thereby fundamentally changing the United States' approach to aviation security. *See Field v. Napolitano*, 663 F.3d 505, 508 (1st Cir. 2011) (quoting H.R. Rep. No. 107-296, at 1, 49 (2001), 2002 U.S.C.C.A.N. 589, 0, 590 (Conf. Rep.)). In part, the ATSA created the TSA and authorized the TSA security screener workforce. 49 U.S.C. § 114(a), (e). The ATSA also granted TSA's head administrator the authority to set employment terms, standards, and conditions for screeners.

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the Under Secretary determines to be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code. . . .

Pub. L. No. 107-71, § 111(d), 115 Stat. 597 (2001) (codified as a note to 49 U.S.C. § 44935(f)).[1]

In general, the Supreme Court has interpreted the term "notwithstanding" as a clear intention to override all other laws. *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). Every circuit court of appeals to address the issue has held that the plain language of § 111(d) preempts the application of the Rehabilitation Act to employment decisions concerning security screening positions. *See Field v. Napolitano*, 663 F.3d 505, 510 (1st Cir. 2011); *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir.), *cert. denied*, 132 S. Ct. 290 (2011); *Castro v. Sec'y of Homeland*

---

[1]     Codification of the provision as a statutory note is of no legal significance. *See Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382-83 (Fed. Cir. 2004). All provisions enacted by Congress must be given equal weight, regardless of their placement by the codifier. *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964); *see also* 1 U.S.C. § 112 (providing that the Statutes at Large are the laws of the United States).

*Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006); *see also Conyers v. Rossides*, 558 F.3d 137, 144-45, 149 (2d Cir. 2009) (holding the ATSA preempted judicial review of Administrative Procedure Act and Veterans Employment Opportunities Act claims); *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382-83 (Fed. Cir. 2004) (holding the ATSA exempted TSA from several federal laws that would otherwise protect airport security screeners). Numerous district courts have held likewise. *See, e.g.*, *Teamer v. Napolitano*, Civ. No. H-11-1808, 2012 WL 1551309, at *1 n.2, *9 (S.D. Tex. May 1, 2012); *Whitby v. Napolitano*, Civ. No. 5:08-cv-242 (HL), 2011 WL 744507, at *7 (M.D. Ga. Feb. 23, 2011); *Baldwin v. Napolitano*, No. 10-cv-11096, 2010 WL 2730769, at *2 n.1 (E.D. Mich. July 9, 2010); *Jackson v. Napolitano*, No. CV-09-1822-PHX-LOA, 2010 WL 94110, at *6 (D. Ariz. Jan. 5, 2010); *Floyd v. U.S. Dep't of Homeland Sec.*, Civ. No. RDB-09-0735, 2009 WL 3614830, at *4 (D. Md. Oct. 27, 2009). The Eighth Circuit has not addressed the issue, but there is no authority indicating that the court would take a contrary position to what has become the universal rule.

In *Field*, the First Circuit articulated several reasons why allowing security screeners to sue under the Rehabilitation Act is inconsistent with the ATSA. First, the specific ATSA requirements for screeners and the expansive grant of authority to the TSA head administrator supplant the more general provisions of the Rehabilitation Act. *Field*, 663 F.3d at 511 (noting "the Rehabilitation Act standards are not consistent with the physical qualifications that the TSA Administrator has established for the screener position."). Second, Congress clearly intended to prevent "second-guessing of TSA's decisions as to implementing the criteria Congress has established and the discretion as to employment standards given to TSA." *Id.* at 511-12. Third, Congress also clearly intended "to free TSA from the costs and burdens of litigation in federal court over such decisions." *Id.* at 512. The Court finds these reasons persuasive.

7

Plaintiff urges the Court to limit the applicability of § 111(d) to subdivisions (e) and (f) of § 44935 only insofar as those provisions actually conflict with employment discrimination laws. The only authorities supporting Plaintiff's position are administrative rulings by the EEOC, in which the EEOC advocated case-by-case determinations of whether the TSA's decisions conform to the Rehabilitation Act. *E.g.*, *Chapman v. Chertoff*, EEOC Appeal No. 0120051049, 2008 WL 3820633 (Aug. 6, 2008). The First Circuit considered and specifically rejected Plaintiff's argument in *Field*, stating plainly, "Congress gave the EEOC no role to play in interpreting the ATSA." 663 F.3d at 513. Rather, Congress granted the TSA's head administrator the authority to interpret the ATSA and set employment standards for screeners. *Id.* Furthermore, the court continued, the EEOC has no particular expertise in aviation security, and the EEOC's approach is inconsistent with the plain language of the ATSA. *Id.* The Court finds the reasoning in *Field* convincing, and Plaintiff has not identified any case authority endorsing the EEOC's view.

Plaintiff next argues that Congress surely did not intend for the ATSA to permit unfettered disability discrimination, especially if the discrimination bears no relationship to aviation security. The legislative history of § 111(d) demonstrates that Congress was well aware of the expansive discretion it was granting to the TSA, however. The original Senate proposal of § 111(d) would have provided for certain employment protections for screeners, but those protections were removed before the final version was passed. *See Conyers v. Rossides*, 558 F.3d 137, 140 (2d Cir. 2009) (quoting *Am. Fed'n of Gov't Emps. TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 77 (D.D.C. 2006)). During the House of Representatives' debate on the Senate conference report, several representatives expressed their understanding that screeners would not receive civil service or other employment protections. For example, Representative John Duncan

remarked that screeners would not be entitled to civil service benefits or safeguards. 147 Cong.

Rec. H8300, H8303 (Nov. 16, 2001). Representative Jan Schakowsky noted that

> we have left the Secretary of Transportation with a great deal of discretion as to
> whether those new public employees will enjoy the same employment benefits
> and protections as other federal workers. While we agree that these federal law
> enforcement employees will not have the right to strike, it is my understanding
> that the Secretary is given the authority to determine whether they can join a
> union; participate in the Federal Employees Health Benefit Plan and retirement
> options; and be covered by non-discrimination, health and safety, and
> whistleblower laws.

*Id.* at H8313. During the Senate proceedings, Senator Jay Rockefeller confirmed that "the most

basic rights of Federal workers: health care, worker's compensation, and civil rights and

whistleblower protection" were left to the TSA's discretion. 147 Cong. Rec. S11974, S11982

(Nov. 16, 2001). Clearly, Congress was mindful of the broad preclusive effect of § 111(d) and its

effect on the employment terms and conditions of airport security screeners.

Plaintiff next argues that during the final months of her employment, she was not

performing "screening functions" as referred to in § 111(d) and described in § 44901. Thus, she

contends that § 111(d) does not preempt her Rehabilitation Act claim. Plaintiff does not dispute,

however, that her job title was "transportation security screener" throughout her employment.

After her security screening certification expired in 2005, she was given modified duties such as

watching and monitoring passengers waiting for additional screening after setting off a metal

detector. (Am. Compl. Ex. 5 at 5, 7.) This function is inherent in § 44901(a)'s mandate to

"provide for the screening of all passengers and property . . . that will be carried aboard a

passenger aircraft . . . . [T]he screening shall take place before boarding and shall be carried out

by a Federal Government employee." 49 U.S.C. § 44901(a). Neither § 111(d) nor § 44901

requires screeners to be certified, and neither statute requires screeners to be assigned exclusively

to checkpoint screening duties. Indeed, screeners routinely rotate assignments, one of which is to

monitor the exit lane. (Am. Compl. Ex. 5 at 6.) Screeners also perform duties in the payroll, lost-and-found departments, and scheduling departments on a temporary basis. (*Id.*) Accordingly, neither Plaintiff's lack of certification nor her assignment to duties such as monitoring doors or exit lanes terminated her status as a screener. If this were true, then every screener who failed to recertify or who was assigned duties outside the checkpoint area would be able to sue under the Rehabilitation Act. Such a result would undermine the grant of broad discretion bestowed by § 111(d) and discourage the TSA from attempting to find modified duties for screeners in need of accommodation.

When a screener has become physically or mentally unable to perform his or her regular job duties and was assigned modified duties in lieu of termination, courts continue to recognize the preclusive effect of § 111(d). For example, in *Field*, an airport screener was assigned adjusted job duties after developing a diabetic ulcer on his foot. 663 F.3d at 506. After he became unable to perform even the adjusted job requirements, he missed several months of work and was terminated. *Id.* The court discussed the TSA's voluntary Management Directive, under which employees may request a reasonable accommodation unless they cannot meet the statutory requirements for a screener position. *Id.* at 511, 513. The court then found that granting an employee an accommodation and modifying the employee's job duties under the Management Directive did not operate as a waiver of § 111(d). *Id.* at 514. In *Baldwin*, the plaintiff was terminated from his employment as a screener after he failed his recertification examination three times. 2010 WL 2730769, at *1. His lack of certification did not remove him from classification as a security screener under the ATSA, however, and his Rehabilitation Act claim was therefore preempted. *Id.* at *1 n.1.

Plaintiff next argues that she expressed interest in several positions that would not require her to perform screening functions, such as in the lost-and-found, customer service, human resources, and payroll departments. Plaintiff submits that these positions fall outside the scope of § 111(d). Defendants do not dispute that if Plaintiff had applied to a vacant, fully-funded, non-screening position, she would not be foreclosed from bringing a Rehabilitation Act claim. Assignment to the duties listed by Plaintiff was temporary, however, and the positions were not separately funded. (Am. Compl. Ex. 5 at 6, 12.) Moreover, although Plaintiff expressed interest in other assignments, she never actually applied for them. (*Id.* at 8, 10, 12.) Finally, all of the alternative assignments listed by Plaintiff were simply different duty assignments for security screeners. As such, these positions were also subject to § 111(d).

In sum, Plaintiff's Rehabilitation Act claim is preempted by the ATSA and should be dismissed.

### C.   Plaintiff's ADA Claim

Defendants argue that Plaintiff's ADA claim should be dismissed because the ADA does not protect federal employees. Defendants are correct. The ADA explicitly excludes the federal government from the definition of "employer." *See* 42 U.S.C. § 12111(5)(B)(i); *Carroll v. Potter*, 163 F. App'x 450, 450 (8th Cir. 2006) (citing *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 11 n.1 (1st Cir. 2004)). Thus, Plaintiff has no remedy under the ADA, and her claim should be dismissed.

### D.   Plaintiff's Title VII Claim

Defendants argue that Plaintiff's Title VII claim should be dismissed for failure to state a claim. The Amended Complaint contains no factual allegations to support an inference that Defendants discriminated against Plaintiff on the basis of her race, color, religion, sex, or

national origin. Indeed, the only reference to Title VII is a box Plaintiff checked on the Employment Discrimination Complaint form. (Am. Compl. at 3.) On the part of the form asking why she felt discriminated against, she did not check the boxes for race, religion, national origin, color, gender, or age. (*Id.* at 4-5.) Thus, Plaintiff's Title VII claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

Alternatively, Defendants argue that Plaintiff did not exhaust her administrative remedies with respect to her Title VII claim, and therefore, the claim must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Exhaustion of administrative remedies is not a jurisdictional requirement for a Title VII claim, however. *See Jessie v. Potter*, 516 F.3d 709, 712-13 (8th Cir. 2008) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). In assessing Plaintiff's Title VII claim under Rule 12(b)(6), the claim fails only if Plaintiff pled facts demonstrating non-exhaustion. *See id.* at 713 n.2 (on a motion to dismiss a Title VII claim, stating that "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."). Neither the face of the Amended Complaint nor the attached exhibits establish that Plaintiff failed to exhaust administrative remedies for the Title VII claim. Plaintiff did not include a copy of the EEOC complaint as an exhibit to the Amended Complaint. Consequently, the Title VII claim is not subject to dismissal for lack of exhaustion.

### E.      Claims Against the Individual Defendants

The individual defendants argue for dismissal of all claims against them in their capacity as individuals. While this argument may have merit, the Court does not address it because all of Plaintiff's claims fail on other grounds.

### III.    PLAINTIFF'S MOTIONS

Plaintiff's motions should be denied as moot for the simple reason that she has failed to state any claim on which relief may be granted. However, in the interest of thoroughness, the Court will briefly discuss why each motion should be denied on the merits.

### A.    Plaintiff's Motion Pursuant to Section 706(f)(2) of Title VII

Section 706(f)(2) of Title VII provides in relevant part:

> Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge.

42 U.S.C. § 2000e-5(f)(2). By its terms, the statute permits only the EEOC to request relief; it does not provide for a private cause of action. *See Chandler v. Roudebush*, 425 U.S. 840, 846-47 (1976). Accordingly, Plaintiff's motion requesting relief pursuant to § 706(f)(2) should be denied.

### B.    Plaintiff's Motion Pursuant to Rule 9(g)

Pursuant to Federal Rule of Civil Procedure 9(g), Plaintiff moves for an order requiring the individual Defendants to pay her medical bills and transportation costs. Rule 9(g) pertains to the pleading of special matters and requires a party to plead with specificity any special damages. Rule 9(g) does not provide for an actual award of such relief, however, and Plaintiff's motion should be denied accordingly.

### C.    Plaintiff's Motion Pursuant to Rule 8(a)

Similarly, pursuant to Federal Rule of Civil Procedure 8(a), Plaintiff requests an order requiring the individual Defendants to compensate her for insurance premiums she paid after her

health insurance was canceled. Rule 8(a) also pertains only to pleading requirements, however, and affords Plaintiff no basis for the relief she seeks. Her motion should be denied accordingly.

### D.      Plaintiff's Motion for Tort

Through this motion, Plaintiff asks that Defendants pay her $3,000,000 for causing intentional infliction of emotional pain. This motion should be denied for at least two reasons. First, Plaintiff has not alleged a claim under the Federal Tort Claims Act (FTCA), and sovereign immunity otherwise protects federal agencies from suit. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). Second, even if Plaintiff had alleged an FTCA claim, she did not present her tort claim to the TSA within two years of the claim's accrual, as required by 28 U.S.C. § 2401(b). Unlike a Title VII claim, the presentment requirement for an FTCA claim is jurisdictional. *Mader v. United States*, 654 F.3d 794, 805, 808 (8th Cir. 2011). Plaintiff did not present her claim to the TSA until January 3, 2012 (Grimes Decl. Ex. A, ECF No. 62-1), which was more than three years after her alleged constructive discharge in May 2008. Thus, the Court lacks subject matter jurisdiction over the potential FTCA claim.

## IV.    RECOMMENDATION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion and Amended Motion to Dismiss (ECF Nos. 27, 50) be **GRANTED**;

2.      Plaintiff's Motion to/for Section 706(f)(2) of Title VII (ECF No. 30) be **DENIED**;

3.      Plaintiff's Motion to/for Rule 9 (ECF No. 33) be **DENIED**;

4.      Plaintiff's Motion to/for Rule 8 (ECF No. 39) be **DENIED**;

5.      Plaintiff's Motion to/for Tort-Intentional Infliction of Emotional Pain (ECF No.

45) be **DENIED**;

6.      This case be **DISMISSED WITH PREJUDICE**; and

7.      **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: August 7, 2012

  _s/ Jeanne J. Graham_____
JEANNE J. GRAHAM
United States Magistrate Judge


## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 22, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.